**HAMILTON v. R. S. DICKSON & CO., Inc.**
**No. 384.**

Circuit Court of Appeals, Second Circuit.
July 27, 1936.

Root, Clark, Buckner & Ballantine, of New York City (Herman T. Stichman and Richard E. Manning, both of New York City, of counsel), for appellant.

Wiley & Willcox, of New York City, (Alexander Wiley and Bertram F. Willcox, both of New York City, of counsel), for appellee.

Before L. HAND, AUGUSTUS N. HAND, and CHASE, Circuit Judges.

CHASE, Circuit Judge.

The plaintiff sold certain bonds to the defendant at an agreed price to be paid on delivery in New York. The Chase National Bank was the agent for the plaintiff to deliver the bonds and collect the purchase price. Under the contract delivery was to be made on or before 2:15 p. m. on March 2, 1933. Previous to that time the plaintiff's agent refused to take the defendant's check in payment and refused to accept its check to be certified. Instead, it demanded a check already certified and that the defendant refused to give. It was agreed, however, at the suggestion of plaintiff's agent, that delivery might be made by sending the bonds to the Harriman National Bank in New York City to be accepted and payment made by that bank in behalf of the defendant without specifying any particular means or medium of payment. The bonds were not tendered to the Harriman Bank on time, but they were delivered to it on the next day and accepted. The Harriman Bank, in which the defendant then had a balance on deposit in its checking account which exceeded the price of the bonds, gave the plaintiff's agent its cashier's check for the amount of the purchase price. This controversy has arisen because it failed to open the next day and before its check was paid and has since remained closed. The check has never been paid, though dividends have been received by the plaintiff during the liquidation of the Harriman Bank under a stipulation with the defendant that they might be accepted and credited on the claim without prejudice to the rights of the parties to this suit as between themselves.

This suit was brought against the defendant to recover the purchase price of the bonds. The defense relied upon is payment in the manner above stated. The action was originally brought in the New York Supreme Court, New York county, and was removed because of diversity of citizenship. It was tried to a jury in the District Court, where a verdict for the plaintiff was directed, and the judgment from which this appeal was taken entered thereon.

The parties are apparently in agreement that the seller, bound only to deliver the bonds against payment, could have demanded payment in cash, but it appears to be customary in New York to make payment in such transactions by check. No doubt the general rule is that, where the seller takes the buyer's check in payment without more, the check is taken only as conditional payment of the debt which is not discharged unless, upon presentation for payment in due course, the check is paid. Huron College v. Union County Trust Co. (C.C.A.) 77 F.(2d) 609; Kinder v. Fisher's

National Bank, 93 Ind.App. 213, 177 N.E. 904. Whether a check is taken in absolute, or only conditional, payment is one of intention. Greenough v. Munroe, 53 F.(2d) 362, 80 A.L.R. 797 (C.C.A.2). But there is a variation of the general rule where the debt is created simultaneously with the obligation to make immediate payment and the creditor then takes the credit of a third party instead of insisting upon receiving payment in cash though his contract gives him that right. New York & Cuba Mail S. S. Co. v. Texas Co. (C.C.A.) 282 F. 221; Hall v. Stevens, 116 N.Y. 201, 22 N.E. 374, 5 L.R.A. 802; Atlas S. S. Co. v. Colombian Land Co. (C.C.A.) 102 F. 358. From the fact that third party credit was accepted in lieu of strict performance, a presumption is said to arise that it was taken as the equivalent of absolute performance, since such an intention is to be inferred from what was done. But it should be recognized that this is only a variation of the general rule which requires performance by actual payment, in that performance is still required, though it may be by the seller's acceptance of what the parties understood to be the equivalent of actual payment, and subsequent events for which neither party is responsible show it to have been otherwise. So, where a contract of sale such as the one in suit calls for payment upon delivery and the buyer's draft on a third party (the buyer's check on a bank for instance) is taken without any express agreement that it will constitute complete performance by the buyer, it is unreasonable to believe that the seller was willing merely to take the buyer's unaccepted order upon another as absolute payment. But, where the seller takes a third party's credit instead of insisting upon performance to the letter of the contract, as for instance payment in actual cash where cash is demandable, it is to be inferred, in the absence of aught else, that he was willing to, and did, take that third party credit in satisfaction of the liability of the buyer. While it is still a matter of intent, the fact of the acceptance of the obligation of the third party against delivery is taken to show an intent to take that obligation in lieu of other payment by the buyer. Especially is this so where, as here, the seller consented to accept payment from the Harriman Bank after declining to take the buyer's check unless the buyer had its check certified and then accepted the cashier's check without question. Conceding that the buyer was entitled to cash on delivery, it is clear that on the day the cashier's check was delivered to its agent it was given its opportunity to get its cash. The Harriman Bank was not then closed, and we must take it for granted that it would then have cashed its check had the buyer's agent elected to present it and ask for cash. The plain fact is that actual cash was not then wanted. Its equivalent in the convenient form of the cashier's check was desired and was accepted by the plaintiff's agent against delivery of the bonds. The very kind of payment which would have preserved the liability of the defendant beyond that time, i. e., payment by means of the defendant's own check, had been refused. The plaintiff's agent wanted none of the defendant's credit, but wanted and got the bank's check instead. That much certainly follows from what was done. Having imposed its own interpretation of the contract as to the medium in which payment was to be made, the defendant became bound by its choice. It never meant to take the buyer's credit, and that precludes it from having the transaction now treated, as a matter of law, as though it had. The buyer merely directed the bank to pay, and it did so in the way the seller required. The legal result that follows from the taking of the cashier's check under such circumstances is exactly the same as though the bank had actually offered cash to the seller, and it had taken the bank's receipt for that cash to the amount of the purchase price and left it in the possession of the bank as bailee. The bank's check, being the kind of payment the seller's agent wanted, discharged the buyer's obligation. People ex rel. Port Chester Savings Bank v. Cromwell, 102 N.Y. 477, 7 N.E. 413; Elm City Lumber Co. v. Mackenzie, 77 Conn. 1, 58 A. 10. Appellee relies upon the decision in Thomas v. Westchester County, 115 N.Y. 47, 21 N.E. 674, 4 L.R.A. 477, but that is distinguishable from this case for the reasons given in that opinion to distinguish it from the Cromwell Case, supra.

Judgment reversed.